UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
ERICK JEOVANNY RUIZ PEREZ,

                                        Plaintiff,                    **REPORT AND**
                                                                      **RECOMMENDATION**

              -against-                                               22-CV-6353

E.P.E ENTERPRISE CORP., JERUSALEM BEDDING                            (Gujarati, J.)
CORP., PIERO TEJADA MAGANA, and CHRISTINA                            (Marutollo, M.J.)
ACEVEA,
                                        Defendants.
------------------------------------------------------------------------x


**JOSEPH A. MARUTOLLO, United States Magistrate Judge:**

        Plaintiff Erick Jeovanny Ruiz Perez commenced this action on October 20, 2022, alleging

that his former employers, E.P.E. Enterprise Corp. and Jerusalem Bedding Corp. (together, the

"Corporate Defendants"), as well as Piero Tejada Magana and Christina Acevea (together, the

"Individual Defendants") (collectively, "Defendants"), failed to pay him overtime wages for work

performed in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, and

New York Labor Law ("NYLL") §§ 650 *et seq.*  Plaintiff also alleges that Defendants failed to

pay him spread of hours wages in violation of NYLL §§ 650 *et seq.*, and failed to provide him with

appropriate wage statements and notices in violation of NYLL §§ 195 *et seq.*  *See generally* Dkt.

No. 1 ("Compl.").

        Currently pending before this Court, on a referral from the Honorable Diane Gujarati,

United States District Judge, is Plaintiff's Second Motion for Default Judgment as to Defendant

Tejada Magana ("Plaintiff's Motion").  Dkt. No. 29; *see also* January 4, 2024 Referral Order.

        For the reasons set forth below, the undersigned respectfully recommends that the District

Judge **GRANT in part** Plaintiff's Motion as follows: (1) a default judgment should be entered

against Defendant Tejada Magana; and (2) Plaintiff should be awarded damages of $102,106.90, comprised of: (a) $37,083.14 for unpaid overtime wages; (b) $1,182.00 for unpaid spread of hour wages; (c) $38,265.14 in liquidated damages; (d) $14,624.62 in prejudgment interest to increase by $9.43 per day until the date judgment is entered; (e) post-judgment interest as set forth in 28 U.S.C. § 1961(a); (f) attorneys' fees of $9,000.00; and (g) costs of $1,952.00. Additionally, the Court respectfully recommends dismissal of Plaintiff's Fourth, Fifth, and Sixth causes of action without prejudice for lack of standing.

## I.    Background

### A.    Factual Allegations

The following facts are taken from the Complaint, Plaintiff's Motion, and the attachments filed in support of Plaintiff's Motion; the facts are assumed to be true for the purposes of this motion. *See Esquivel v. Lima Rest. Corp.*, No. 20-CV-2914 (ENV) (MMH), 2023 WL 6338666, at *1 (E.D.N.Y. Sep. 29, 2023) (citing *Bricklayers & Allied Craftworkers Loc. 2 v. Moulton Masonry & Constr., LLC*, 779 F.3d 182, 188 (2d Cir. 2015)).

The Corporate Defendants—organized and existing under New York law—operate a warehouse and factory located at 103 Powell Street in Brooklyn, New York. Compl. ¶ 6. The Individual Defendants serve as owners and officers of the Corporate Defendants. *Id.* at ¶ 10. At all relevant times, the Corporate Defendants were also employers "engaged in interstate commerce and/or the production of goods" and had gross revenues in excess of $500,000 during the years in which Plaintiff was employed. *Id.* at ¶¶ 8-9.

Defendants employed Plaintiff from 2008 to approximately July 13, 2021. *Id.* at ¶ 16. Plaintiff worked as "an operator and porter in a factory where mattresses were assembled." *Id.* at ¶ 5. Plaintiff worked approximately 50-56 hours per week for the Defendants. *Id.* at ¶ 17.

Plaintiff, however, was "never paid overtime for the at least 10-16 hours per week in overtime he worked, as required by the FLSA and NYLL." *Id.* at ¶ 20. Plaintiff also purports that Defendants failed to compensate Plaintiff a "spread of hours" though Plaintiff "often worked ten hours per day or more." *Id.* at ¶ 21. Finally, Plaintiff asserts that Defendants failed to provide him with wage statements or notices as required by state law. *Id.* at ¶¶ 22-23.

### B. Procedural History

Plaintiff filed the Complaint on October 20, 2022. *See* Dkt. No. 1. On October 24, 2022, the Clerk of Court issued summonses for all Defendants. Dkt. Nos. 4-7.

Plaintiff served Defendant E.P.E Enterprise Corp. on November 1, 2022. Dkt. No. 9. E.P.E Enterprise Corp.'s answer was due on November 22, 2022. *Id.*

Plaintiff served defendant Christina Acevea on November 1, 2022. Dkt. No. 10. Defendant Acevea's answer was due on November 22, 2022. *Id.*

Plaintiff served defendant Piero Tejada Magana on November 1, 2022. Dkt. No. 11. Defendant Tejada Magana's answer was due on November 22, 2022. *Id.*

Plaintiff served Defendant Jerusalem Bedding Corp. on November 1, 2022. Dkt. No. 12. Jerusalem Bedding Corp.'s answer was due on November 22, 2022. *Id.*

Plaintiff also served properly served Corporate Defendant E.P.E Enterprise Corp. through delivery to an authorized agent at the Office of the Secretary of State of the State of New York on November 17, 2022. Dkt. No. 13. E.P.E Enterprise Corp.'s answer date, resulting from service at the Office of the Secretary of State, was due on December 8, 2022. *Id.*

Similarly, Plaintiff properly served Defendant Jerusalem Bedding Corp. through delivery to an authorized agent at the Office of the Secretary of State of the State of New York on November

17, 2022. Dkt. No. 14. Jerusalem Bedding Corp.'s answer date, resulting from service at the Office of the Secretary of State, was due on December 8, 2022. *Id.*

No answers or responses have been interposed by Defendants.

On January 12, 2023, the Honorable Ramon E. Reyes, Jr., then-United States Magistrate Judge, ordered, *inter alia*, that "[n]o later than January 26, 2023, one of the following events must occur [on pain of dismissal for failure to prosecute]: (a) the parties must file a stipulation extending the defendants time to answer, (b) the plaintiff must file a motion for the entry of a notation of default or (c) the defendants must file an answer." *See* Electronic Order dated January 12, 2023. On January 26, 2023, Plaintiff requested a Certificate of Default from the Clerk of Court. Dkt. No. 15.

On February 1, 2023, the Clerk of Court entered a default noting that each Defendant has "failed to appear or otherwise defend this action." Dkt. No. 16. On the same date, Judge Reyes ordered Plaintiff to move for default judgment "on or before February 15, 2023." *See* Electronic Order dated February 1, 2022.

On February 15, 2023, Plaintiff filed a motion for default judgment (Dkt. No. 17) containing (1) a notice of motion (*id.*); (2) a copy of the Complaint (Dkt. No. 17-3); and (3) supporting affidavits and exhibits (Dkt. No. 17-2; 17-4; 17-5; 17-6).

On June 9, 2023, Judge Reyes issued an Order requiring Plaintiff to file proof of mailing pursuant to Local Civil Rule 55.2(c). *See* Text Order dated June 9, 2023. On July 19, 2023, an Inquest Hearing was held before Judge Reyes. *See* Minute Entry dated July 19, 2023.

On August 16, 2023, Plaintiff supplemented his motion for default judgment with a calculation of damages. *See id.*; Dkt. No. 24.

On August 29, 2023, Judge Reyes issued a Report and Recommendation recommending that Plaintiff's motion for default judgment be granted as to the Corporate Defendants, denied with prejudice as to Defendant Acevea, and denied without prejudice as to Defendant Tejada Magana. Dkt. No. 25; *see also Perez v. E.P.E. Enter. Corp.,* No. 22-CV-6353 (DG) (RER), 2023 WL 7000934 (E.D.N.Y. Aug. 29, 2023). The Court noted that Plaintiff failed to comply with Local Rule 55.2(c) with respect to Defendant Tejada Magana because Plaintiff "failed to establish that motion papers were mailed to the Owners' last known residence(s)." *Id.* at *3 (quotation in original). Rather, Plaintiff mailed all motion papers to the warehouse and factory with the Corporate Defendants operated—but failed to provide any indication that the warehouse and factory were the "Owners' last known residence(s)." *Id.*

No objection to Judge Reyes's Report and Recommendation was filed. On October 17, 2023, Judge Gujarati adopted the Report and Recommendation in its entirety—granting the motion for default judgment as to the Corporate Defendants, denying with prejudice as to Defendant Acevea, and denying without prejudice as to Defendant Tejada Magana. *See* Text Order adopting Report and Recommendation, dated October 17, 2023.

On November 13, 2023, this action was reassigned to the undersigned. On November 13, 2023, Plaintiff apprised the Court of its intent to move for default judgment with respect to Defendant Tejada Magana—which this Court directed Plaintiff to file by January 3, 2024. Dkt. No. 28; Text Order dated November 21, 2023.

On January 3, 2024, Plaintiff filed Plaintiff's Motion, which contained a Notice of Motion (Dkt. No. 29), a supporting declaration, an affidavit of service of the motion papers upon Defendant Tejada Magana, and exhibits (Dkt. Nos. 29-2; 29-3; 29-4). On January 4, 2024,

Plaintiff's Motion was referred to the undersigned for a Report and Recommendation. *See* Referral Order dated January 4, 2024.

On January 19, 2024, upon review of the moving papers, this Court noted that Plaintiff's renewed submissions failed to contain a memorandum of law as required by Local Civil Rule 55.2(b)(3), an affidavit stating whether the Individual Defendants are active in military service, and evidence of damages. *See* Text Order dated January 19, 2024.

On January 24, 2024, Plaintiff filed a memorandum of law ("Pl.'s Mem.") (Dkt. No. 31), a supporting declaration containing as to Defendant Tejada Magana's military status, and an affidavit of service of the motion papers upon Defendant Tejada Magana. Dkt. No. 33.

## II.    Standard for Default Judgment

"Rule 55 of the Federal Rules of Civil Procedure provides a two-step process for obtaining a default judgment." *Priestley v. Headminder, Inc.*, 647 F.3d 497, 504 (2d Cir. 2011). At the first step, the Clerk of Court enters a party's default after an affidavit or other evidence shows that the "party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend." Fed. R. Civ. P. 55(a); *see Esquivel*, 2023 WL 6338666, at *3 ("when a party uses an affidavit or other proof to show that a party has 'failed to plead or otherwise defend' against an action, the clerk shall enter a default." (citing Fed. R. Civ. P. 55(a)). "If a claim is for 'a sum certain or a sum that can be made certain by computation,' the clerk can enter judgment." *Id.* (citing Fed. R. Civ. P. 55(b)(1)).

At the second step, and "[i]n all other cases, the party must apply to the court for a default judgment." *Id.* (citing Fed. R. Civ. P. 55(b)(2)). To "enter or effectuate judgment", the Court is empowered to: "(A) conduct an accounting; (B) determine the amount of damages; (C) establish

the truth of any allegation by evidence; or (D) investigate any other matter." Fed. R. Civ. P. 55(b)(2).

The Second Circuit "generally disfavor[s]" default judgment and has repeatedly expressed a "preference for resolving disputes on the merits." *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993). Nevertheless, in evaluating a motion for default judgment, a court accepts as true the plaintiff's well-pleaded factual allegations, except those relating to damages. *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992); *see also Flaks v. Koegel*, 504 F.2d 702, 707 (2d Cir. 1974). A plaintiff bears the burden of alleging "specific facts," rather than "mere labels and conclusions" or a "formulaic recitation of the elements," so that a court may infer a defendant's liability. *Cardoza v. Mango King Farmers Mkt. Corp.*, No. 14-CV-3314 (SJ) (RER), 2015 WL 5561033, at *3 (E.D.N.Y. Sept. 1, 2015) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)), *report and recommendation adopted*, 2015 WL 5561180 (E.D.N.Y. Sept. 21, 2015)).

"In the context of a motion for default judgment on FLSA and NYLL claims, 'the plaintiff's recollection and estimates of hours worked are presumed to be correct.'" *Chen v. Oceanica Chinese Rest., Inc.*, No. 13-CV-4623 (NGG), 2023 WL 2583856, at *6 (E.D.N.Y. Mar. 21, 2023) (quoting *Gunawan v. Sake Sushi Rest.*, 897 F. Supp. 2d 76, 83 (E.D.N.Y. Sep. 24, 2012)); *see also Santillan v. Henao*, 822 F. Supp. 2d 284, 294 (E.D.N.Y. Sep. 30, 2011) ("[I]n the absence of rebuttal by defendants, or where the employer has defaulted, as here, the employee's recollection and estimates of hours worked are presumed to be correct." (quotations, citations, and alterations omitted)).

The decision to grant or deny a default motion is "left to the sound discretion of a district court." *Esquivel*, 2023 WL 6338666, at *3 (quoting *Shah v. New York State Dep't of Civ. Serv.*,

168 F.3d 610, 615 (2d Cir. 1999)).  A court "possesses significant discretion" in granting a motion for default judgment, "including [determining] whether the grounds for default are clearly established."  *Chen*, 2023 WL 2583856, at *7 (quotations and citation omitted).

## III. Discussion

### A. Jurisdiction and Venue

The Court "must satisfy itself that it has subject matter and personal jurisdiction before rendering judgment against defendants."  *Dumolo v. Dumolo*, No. 17-CV-7294 (KAM)(CLP), 2019 WL 1367751, at *4 (E.D.N.Y. Mar. 26, 2019); *see Covington Indus., Inc. v. Resintex A.G.*, 629 F.2d 730, 732 (2d Cir. 1980) ("A judgment entered against parties not subject to the personal jurisdiction of the rendering court is a nullity.").

### i. Subject Matter Jurisdiction

Federal district courts have original subject matter jurisdiction over all civil actions "arising under" the "laws . . . of the United States." 28 U.S.C. § 1331.  Plaintiff's first cause of action alleges a violation of the overtime wage provisions of the FLSA.  *See* Compl. ¶¶ 24-33.  Nothing in the record suggests that Plaintiff's FLSA claims are immaterial, made solely for the purpose of obtaining jurisdiction, wholly insubstantial, or frivolous.  *Cf. A&B Alt. Mktg. Inc. v. Int'l Quality Fruit Inc.*, 35 F.4th 913, 915 n.2 (2d Cir. 2022).  This action thus arises under the laws of the United States, which gives the Court subject matter jurisdiction over this action.  *See, e.g., Rocha v. Bakhter Afghan Halal Kababs, Inc.*, 44 F. Supp. 3d 337, 345 (E.D.N.Y. 2014).

The Court also has supplemental jurisdiction over Plaintiff's NYLL claims, namely Plaintiff's second and third causes of action.  Supplemental jurisdiction extends to state law claims that so relate to the claims within the court's original jurisdiction that they form part of the same case or controversy.  28 U.S.C. § 1367(a).  Claims "form part of the same case or controversy"

when they "derive from a common nucleus of operative fact." *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 165 (1997) (quoting *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725 (1966)). Claims derive from a common nucleus of operative fact when the facts underlying the claims "substantially overlap[ ]." *Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 335 (2d Cir. 2006) (*quoting Lyndonville Sav. Bank & Tr. Co. v. Lussier*, 211 F.3d 697, 704 (2d Cir. 2000)). Here, supplemental jurisdiction clearly extends to second and third claims, which seek to recover for unpaid overtime wages and failure to remit "spread of hours" payments under the NYLL, because they virtually overlap with Plaintiff's first claim, which seeks to recover for the same violations under the FLSA. *See* Compl. ¶¶ 24-40.

Plaintiff, in his fourth, fifth, and sixth claims, seeks to recover statutory penalties for Defendant Tejada Magana's purported wage statement (NYLL § 195(3)), wage notice (NYLL §195(1)), and recordkeeping violations. *See id.* ¶¶ 41-57. In a Report and Recommendation dated August 29, 2023, Judge Reyes found that Plaintiff was entitled to statutory damages against the Corporate Defendants for violations for NYLL §§ 195(1) and 195(3). *See Perez v. E.P.E. Enter. Corp.*, 2023 WL 7000934, at *8. After Plaintiff did not object to the Report and Recommendation, and "[h]aving found no clear error," Judge Gujarati adopted Judge Reyes's Report and Recommendation on October 17, 2023. *See* Order Adopting Report and Recommendation, dated October 17, 2023. Plaintiff was thus awarded "the maximum statutory damage award of $5,000 for violating NYLL § 195(1) and the maximum statutory damage award of $5,000 for violating NYLL § 195(3), for a total of $10,000 in statutory damages." *Id.*

Since the Report and Recommendation's adoption, and as explained further below, a growing number of courts in this District (and Circuit) have found—and agreed—that a plaintiff may not recover such statutory penalties in federal court due to a lack of standing. *See Gao v.*

9

*Savour Sichuan Inc.,* No. 19-CV-2515 (JPC), 2024 WL 664718, at *25 (S.D.N.Y. Feb. 16, 2024) (collecting cases). This Court finds that it ultimately lacks subject-matter jurisdiction over, and respectfully recommends dismissal without prejudice, of Plaintiff's fourth, fifth, and sixth causes of action against Defendant Tejada Magana under the NYLL (Compl. ¶¶ 41-57) because Plaintiff lacks standing to pursue those claims in federal court.

Article III of the United States Constitution restricts federal court power to hearing "cases" and "controversies." U.S. Const. Art. III, § 2, cl. 1. A case or controversy cannot exist if the plaintiff lacks a personal stake, or "standing." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). To have Article III standing, the plaintiff must have suffered an injury-in-fact likely caused by the defendant's allegedly unlawful conduct and redressable by a favorable court decision. *Id*. The injury must be "concrete and particularized," which means some specific harm to the plaintiff beyond the defendant's technical violation of a statutory mandate. *Id*. Standing is not "dispensed in gross." *Id*. at 431. Rather, the plaintiff must show standing separately for each claim asserted. *Id*.

"[A] plaintiff must establish Article III standing for *all* of his claims, whether or not the Court also has supplemental jurisdiction." *Guthrie v. Rainbow Fencing Inc.*, No. 21-CV-5929 (KAM) (RML), 2023 WL 2206568, at *3 (E.D.N.Y. Feb. 24, 2023) (emphasis in original). While a Court may hear state claims if they "derive from a common nucleus of operative facts" (*id.* (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966))), a court cannot "discern or speculate which of the 'operative facts' establish an injury to [a plaintiff] on his NYLL wage notice and wage statement claims." *Id.*

Here, Plaintiff did not allege facts linking any legally cognizable injury that he personally experienced to Defendant Tejada Magana failure to provide wage statements and wage notices

under the NYLL. The Complaint merely alleges that Defendants failed to comply with these statutory mandates. *See* Compl. ¶¶ 47-49, 51-53, 55-57. Plaintiff has offered no theory as to *how* he was injured by Defendants' failure to provide the required documents. Instead, Plaintiff argues that Defendants' conduct was willful. *Id.* at ¶¶ 48, 52, 56. But "an employer's intent has no bearing on whether the employer's conduct caused the plaintiff to sustain an actual and concrete injury." *Quieju v. La Jugueria Inc.*, No. 23-CV-264 (BMC), 2023 WL 3073518, at \*2 (E.D.N.Y. Apr. 25, 2023). Without a concrete show of harm, Plaintiff's argument is entirely speculative; indeed, the hypothetical chain of events in *Quieju* is particularly instructive here:

> [a]lthough plaintiff assumes his conclusion without analysis, what he is really saying is that *if* defendants had given him the required documents, those documents *would have* informed him that he was not being paid his required wages. Enlightened by that knowledge, plaintiff then *would have* demanded his required wages. Having made such a demand, defendants *would have* then paid him his required wages, and plaintiff *would have* avoided the injury he suffered by the failure to properly pay him. This implicit analysis apparently leads to plaintiff's conclusion that he has suffered an actual and concrete injury by reason of his employer's violation of [NYLL] § 195.

*Quieju*, 2023 WL 3073518, at \*2 (emphasis in original) (dismissing NYLL §195(1) and (3) claims for lack of standing).

"The injury that plaintiff suffered (*i.e.*, defendants' failure to properly pay him) is not an injury he sustained because of a lack of the required documents; it is an injury sustained because his employer violated its obligation to pay minimum wage, overtime, and spread-of-hours pay under other, express requirements of federal and state law." *Id*. Without some tangible downstream harm flowing from those statutory violations, Plaintiff has not shown that he suffered a concrete injury resulting from Defendants' violations of the NYLL's wage statement and wage notice requirements. Thus, Plaintiff lacks Article III standing to pursue those claims against Defendant Tejada Magana in this Court.

Multiple courts in this district have reached similar results after the Supreme Court's decision in *TransUnion* clarified the rules regarding standing, beyond bare allegations of statutory violations. *See, e.g.*, *Yunganaula v. D.P. Grp. Gen. Contractors/Devs. Inc.*, No. 21-CV-2015 (CBA) (MMH), 2024 WL 1342739, at *1 (E.D.N.Y. Mar. 29, 2024) (noting that "Plaintiff lacks standing to pursue his claims that [the defendant] violated the NYLL's wage notice and wage statement provisions because Plaintiff had not adequately pleaded a tangible injury resulting from [the defendant's] failure to provide the required notices"); *Bayne v. NAPW, Inc.*, No. 18-CV-3591 (MKB) (MMH), 2024 WL 1254197, at *6 (E.D.N.Y. Mar. 25, 2024); *Cao v. Flushing Paris Wedding LLC*, No. 20-CV-2336 (RPK) (JAM), 2024 WL 1011162, at *23 (E.D.N.Y. Mar. 9, 2024), *report and recommendation adopted* (Text Order dated Mar. 29, 2024); *Gao*, 2024 WL 664718, at *25; *Saavedra v. Dom Music Box Inc.*, No. 21-CV-6051 (ENV) (JAM), 2024 WL 208303, at *5 (E.D.N.Y. Jan. 19, 2024), *report and recommendation adopted* (Text Order dated Mar. 13, 2024); *Esquivel v. Lima Rest. Corp.*, No. 20-CV-2914 (ENV) (JAM), 2023 WL 6338666, at *11 (E.D.N.Y. Sept. 29, 2023) *report and recommendation adopted*, (E.D.N.Y. Nov. 30, 2023) (dismissing Plaintiff's NYLL wage notice and wage statement claims without prejudice); *Quieju*, 2023 WL 3073518 at *2; *Guthrie v. Rainbow Fencing Inc.*, No. 21-CV-5929 (KAM) (RML), 2023 WL 2206568, at *6 (E.D.N.Y. Feb. 24, 2023); *Sevilla v. House of Salads One LLC*, No. 1:20-CV-6072 (PKC) (CLP), 2022 WL 954740, at *7 (E.D.N.Y. Mar. 30, 2022) (holding that "it is not clear that [such] policies led to an 'injury' that can be recognized by a federal court" (citations omitted)); *Wang v. XBB, Inc.*, No. 18-CV-7341 (PKC) (ST), 2022 WL 912592, at *13 (E.D.N.Y. Mar. 29, 2022) ("Plaintiff has not linked any injury-in-fact to [the d]efendants' failure to provide statutory notices under the NYLL, so she lacks standing to recover on that claim." (citation omitted)); *Francisco v. NY Tex Care, Inc.*, No. 19 Civ. 1649 (PKC) (ST), 2022 WL 900603, at *7

(E.D.N.Y. Mar. 28, 2022) ("While those may be technical violations of the NYLL, neither [p]laintiff nor the record demonstrate how those technical violations led to either a tangible injury or something akin to a traditional cause of action[.]"); *Perez v. Postgraduate Ctr. for Mental Health*, No. 19-CV-931 (EK) (PK), 2021 WL 3667054, at *7 (E.D.N.Y. Aug. 18, 2021) (finding that the plaintiff lacked Article III standing for a claim alleging that the content of his wage notices violated the NYLL because of an inaccuracy because "not all inaccuracies cause harm or present any material risk of harm").

"[S]ome courts in this Circuit have since reasoned that the 'informational injury' arising from the failure to receive compliant wage notice or wage statements can give rise to Article III standing, so long as the plaintiff can establish concrete, 'downstream consequences' showing 'an interest in using the information" outside of bringing the lawsuit.'" *Gao*, 2024 WL 664718, at *25 (collecting cases) (citations omitted). But again, here, Plaintiff has made no such showing and cannot establish any concrete, downstream consequences showing an interest in using the information from wage notice or wage statements separate and apart from bringing the current litigation.

Thus, because Plaintiff lacks standing, the Court lacks subject matter jurisdiction over his wage notice and wage statement claims under the NYLL against Defendant Tejada Magana as asserted in counts four, five, and six.

Accordingly, the Court respectfully recommends that Plaintiff's NYLL wage notice and wage statement claims against Defendant Tejada Magana be dismissed without prejudice.

### ii.    Personal Jurisdiction

"[B]efore a court grants a motion for default judgment, it may first assure itself that it has personal jurisdiction over the defendant." *Sinoying Logistics Pte Ltd. v. Yi Da Xin Trading Corp.*, 619 F.3d 207, 213 (2d Cir. 2010) (citation omitted).

Here, the Court has personal jurisdiction over Defendant Tejada Magana.  First, Plaintiff properly served the Defendant by personal service.  *See* Dkt. No. 11; *see also* Fed R. Civ. P. 4(e)(1)–e(2)(A); N.Y. C.P.L.R. § 308(1).  "[S]erving a summons . . . establishes personal jurisdiction over a defendant . . . who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59 (2d Cir. 2012) (quoting Fed. R. Civ. P. 4(k)(1)(A)).

Second, New York State has general jurisdiction over its residents.  *See Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 622 n.1 (2d Cir. 2016).  New York courts may exercise jurisdiction over non-domiciliary corporations or individuals "who transact business within the state" so long as "the cause of action arises from that transaction." *Licci*, 673 F.3d at 60; *see also* N.Y. C.P.L.R. § 302(a)(1).  Defendant Tejada Magana served as one of the "owners and officers of the Corporate Defendants" and thus, transacted business in New York.  *See* Compl. ¶ 10.

Accordingly, Plaintiff satisfies the requirements for personal jurisdiction.

### B.    Procedural Requirements

Before the court enters a default judgment, a plaintiff must show that Entry of Default was appropriate, which itself requires a showing that the defendant was effectively served with process. *Sik Gaek, Inc. v. Yogi's II, Inc.*, 682 F. App'x 52, 54 (2d Cir. 2017) (summary order).  Local Civil Rule 55.2 imposes the additional requirements that the plaintiff attach certain materials to the motion and file proof that all motion papers were mailed to the defendant.

### i. Service of Process

The Court finds that Plaintiff properly served the Summons and Complaint on Defendant Tejada Magana. Federal Rule of Civil Procedure 4(e)(1) permits a party to effect service in accordance with the rules of the state where the district is located or where service is made. *See* Fed. R. Civ. P. 4(e)(1). State law permits a party to effect service by (1) delivering the summons within the state to a person of suitable age and discretion at the actual place of business of the person to be served and (2) mailing the summons by first class mail to the person to be served at his or her actual place of business, so long as the delivery and mailing occur within twenty days of each other. N.Y. C.P.L.R. § 308(2).

Here, Plaintiff served Defendant Tejada Magana with notice of this action by his process server delivering the Summons and Complaint to the Defendants' actual place of business at 103 Powell Street, Brooklyn, New York 11212, and leaving those documents with a person of suitable age and discretion. Dkt. No 11. Plaintiff's process server also mailed a copy of the Summons and Complaint by first class mail to the same address. *Id.* Thus, Plaintiff properly served Defendant Tejada Magana.

### ii. Entry of Default

The Court next finds that the Clerk of Court properly entered a Certificate of Default against Defendant Tejada Magana. Because Defendant Tejada Magana was served on November 1, 2022, he was required to answer or otherwise respond to the Complaint by November 22, 2022. *See* Dkt. No. 11; Fed. R. Civ. P. 12(a)(1)(A)(i). When Defendant Tejada Magana failed to do so, Plaintiff filed a request for an Entry of Default and the other materials required by Local Rule 55.1. Dkt. No. 15. The Clerk of Court entered Defendant Tejada Magana's default on February 1, 2023.

Dkt. No. 16. Therefore, this Court finds that the Entry of Default against Defendant Tejada Magana was proper.

### iii. Local Civil Rule 7.1

Local Civil Rule 7.1 requires that a plaintiff attach to a motion for default (1) a notice of motion specifying "the applicable rules or status pursuant to which the motion is brought", (2) a memorandum of law setting forth "the cases and other authorities relied upon in support of the motion, and (3) supporting affidavits and exhibits containing "factual information and portions of the record necessary for the decision of the motion." *See* L. Civ. R. 7.1. Plaintiff complied with the procedural requirement enshrined in Local Civil Rule 7.1 by filing a notice of motion (Dkt. No. 29), a memorandum of law (Dkt. No. 31), and affidavits and exhibits in support of the motion (*see generally* Dkt. Nos. 29, 32-33).

### iv. Local Civil Rule 55.2

Local Civil Rule 55.2(b) requires that a plaintiff attach to a motion for default the Clerk's certificate of default, a copy of the complaint, and a proposed form of default judgment. Local Civil Rule 55.2(c) requires that all papers submitted in connection with a motion for a default judgment be mailed to the "last known residence" of an individual defendant or "last known business address" of a corporate defendant.

In Judge Reyes's report and recommendation, the Court noted that Plaintiff failed to comply with Local Rule 55.2(c) because Plaintiff failed to establish that the motion papers were mailed to, *inter alia*, Tejada Magana's last known residence. *See Perez*, 2023 WL 7000934, a *3.

Plaintiff has now complied with the procedural requirement enshrined in Local Civil Rule 55.2 by mailing all papers to Defendant Tejada Magana's last known residential address(es). *See* Dkt. Nos. 29-2, 33. Specifically, Plaintiff conducted an "'advanced people finder' search using a

commercial database operated by Lexis-Nexis known as Accurint." Dkt. No. 29-1. While the Accurint search returned "no results for 'Piero Tejada Magana' nationwide," it revealed "multiple addresses for individuals who have resided in New York State during the relevant period named 'P. Tejada.'" *Id.* From the list of New York "P. Tejadas," Plaintiff "eliminated deceased persons, females, individuals of advanced age and individuals who are not indicated as having resided in New York State during the period of plaintiff's employment, leaving four individuals who may be the correct defendant, several of whom are listed as presently residing out-of-state." *Id.* Four individuals remained. *Id.* Plaintiff then mailed the motion papers to the most current addresses for these four individuals, including an address at 2514 High Point Cir., Wichita, Kansas 67205-1329. *Id.* Plaintiff also mailed the motion papers to Darren Rumack, Esq., an attorney "who appeared as counsel of record for defendant Piero Tejada Magana in another FLSA action brought in this district against the same defendants, *Juan Najera v. Jerusalem Bedding Corp., et al.*, 20 CV 6224 (RER)." *Id.* Plaintiff noted that Mr. Rumack previously e-mailed the undersigned on behalf of this defendant." *Id.* (attaching email at issue).

On January 24, 2024, Plaintiff reported, in a declaration from his attorney, that Plaintiff "obtained additional information confirming that defendant Tejada Magana is the individual known as Piero Tejada residing at 2514 High Point Cir., Wichita, [Kansas] 67205-1329 and 7 Rhode Island Street, Coram, NY 11727." Dkt. No. 32. Plaintiff served his motion papers at these addresses, while also again serving the papers at the address for Mr. Rumack. Dkt. No. 33.

Accordingly, the Court finds that Plaintiff has complied with Local Civil Rule 55.2.

### v. The Servicemembers Civil Relief Act

The Servicemembers Civil Relief Act (SCRA) requires a plaintiff seeking default judgment to "file with the court an affidavit stating whether or not the defendant is in military service and

17

showing necessary facts to support the affidavit." 50 U.S.C. § 3931; *see also Windward Bora, LLC v. Ortiz*, No. 21-CV-04154 (MKB) (JMW), 2022 WL 3648622, at *5 (E.D.N.Y. July 5, 2022), *report and recommendation adopted*, 2022 WL 3647586 (E.D.N.Y. Aug. 24, 2022). "The non-military affidavit must be based not only on an investigation conducted after the commencement of an action or proceeding but also after a default in appearance by the party against whom the default judgment is to be entered." *Apex Mar. Co. v. Furniture, Inc.*, No. 11-CV-5365 (ENV) (RER), 2012 WL 1901266, at *1 (E.D.N.Y. May 18, 2012).

Here, Plaintiff complied with this statutory requirement in the SCRA by submitting an affidavit indicating that Defendant Tejada Magana is not currently in military service and was not in active military service at the time the Complaint was served or when he was due to respond to the Complaint. Dkt. No. 32. Plaintiff also provided the Court with a "Department of Defense Status Report Pursuant to Servicemembers Civil Relief Act" indicating same in support of the affidavit. Dkt. No. 32-1. The Status Report is dated January 23, 2024—thus reflecting that the affidavit is based on an investigation conducted after the filing of the Complaint. *Id*.; *see generally* Dkt. No. 1.

In light of the above, the Court now turns to whether Plaintiff's well-pleaded factual allegations establish Defendant Tejada Magana's liability as a matter of law.

### C.  Liability

#### i.  Threshold Requirements

As a threshold matter, Plaintiff must show an employer-employee relationship between himself and Defendants to prevail on his FLSA and NYLL claims. *Chang v. Loui Amsterdam, Inc.*, No. 19-CV-3056 (RER), 2022 WL 4586100, at *5 (E.D.N.Y. Sept. 29, 2022). Because district courts in the Second Circuit interpret the NYLL's definition of "employer" coextensively

with the definition the FLSA uses, the Court analyzes this threshold issue based on the FLSA's definitions. *Jiang v. D&S Wedding Planner Inc.*, No. 22-CV-643 (MKB) (CLP), 2023 WL 6307813, at *5 (E.D.N.Y. Sep. 28, 2023).

The FLSA defines "employee" as "any individual employed by an employer," 29 U.S.C. § 203(e)(1), and "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee," 29 U.S.C. § 203(d). The Second Circuit uses a four-factor test based on "economic reality" to determine whether an employer-employee relationship exists. *Irizarry v. Catsimatidis*, 722 F.3d 99, 104 (2d Cir. 2013). The test asks whether the defendant (1) had the power to hire and fire the employee, (2) supervised and controlled the employee's work schedules or conditions of employment, (3) determined the employee's rate and method of payment, and (4) maintained employment records. *Id.* at 104-05. The court must consider the totality of the circumstances, and no single factor is dispositive. *Id.* at 105.

Here, Plaintiff has shown that he had an employer-employee relationship with the Defendant. Plaintiff alleges that he was employed by Defendants, including Defendant Tejada Magana. Compl. ¶¶ 5-6, 10. Plaintiff alleges that Defendant Tejada Magana had the power to hire and fire employees. *Id.* ¶¶ 12, 14. Plaintiff further alleges that Defendant Tejada Magana, as one of the Corporate Defendants' owners and operators, set Plaintiff's work schedules and that each defendant controlled the conditions of Plaintiff's employment. *Id.* Plaintiff also alleges that each defendant determined Plaintiff's rate and method of payment. *Id.* Plaintiff claims that Defendant Tejada Magana "participated in all aspects of the operations of the Corporate Defendants and willfully and intentionally committed the wage violations alleged herein," thereby making Defendant Tejada Magana a "joint owner" within the meaning of the FLSA and the NYLL and "jointly and severally liable to [P]laintiff." *Id.* ¶ 13.

Thus, all four *Irizarry* factors support a finding that as a matter of economic reality, Plaintiff had an employer-employee relationship with each defendant.  By the same token, the Court finds that Defendants are jointly and severally liable for the FLSA and NYLL violations discussed below.  *See Pineda v. Masonry Constr., Inc.*, 831 F. Supp. 2d 666, 685–86 (S.D.N.Y. 2011) (finding allegations that defendant was an "owner, partner, or manager" of plaintiff's corporate employer was enough to qualify him as an FLSA and NYLL employer and to impose joint and several liability with corporate defendant); *see also Fermin v. Las Delicias Peruanas Rest., Inc.*, 93 F. Supp. 3d 19, 37 (E.D.N.Y. 2015) ("As the Court has found that Las Delicias and the Individual Defendants were jointly Plaintiffs' employers, each Defendant is jointly and severally liable under the FLSA and the NYLL for any damages award made in Plaintiffs' favor.").

Plaintiff has also shown that he is not exempt from the FLSA.  The FLSA does not extend minimum wage or overtime protections to an employee in a "bona fide executive, administrative, or professional capacity . . . or in the capacity of outside salesman." 29 U.S.C. § 213(a)(1).  How the plaintiff spent his or her time is a factual question, but whether the employee's activities trigger one of the FLSA's exemptions is a legal one.  *Isett v. Aetna Life Ins. Co.*, 947 F.3d 122, 129-30 (2d Cir. 2020).

Here, Plaintiff alleges that he worked at one of the Corporate Defendants's factories as an "operator and porter."  Compl. ¶ 5.  As a matter of law, such duties do not exempt employees from the FLSA's minimum wage or overtime protections.  *Martinez v. Alimentos Saludables Corp.*, No. 16-CV-1997 (DLI) (CLP), 2017 WL 5033650, at *8 (E.D.N.Y. Sept. 22, 2017) (declining to find that plaintiff, a porter, was exempt from the FLSA); *Morales v. Los Cafetales Rest. Corp.*, No. 21-CV-1868 (AMD) (RER), 2023 WL 7684775, at *3 (E.D.N.Y. Oct. 12, 2023), *report and recommendation adopted*, 2023 WL 8021460 (E.D.N.Y. Nov. 20, 2023) (concluding same); *Reyes*

*v. Coppola's Tuscan Grill, LLC*, No. 21-CV-07040 (AT) (SN), 2023 WL 4303943, at *3 (S.D.N.Y. June 13, 2023), *report and recommendation adopted*, 2023 WL 4304676 (S.D.N.Y. June 30, 2023)("Plaintiff, who was employed as a porter and delivery worker, is not exempt from the FLSA's overtime requirement.").

Finally, Plaintiff has satisfied the FLSA's interstate commerce requirement. The FLSA requires that the plaintiff be either (1) engaged in commerce or the production of goods for commerce or (2) employed in an enterprise engaged in commerce or in the production of goods for commerce. 29 U.S.C. §§ 206(a), 207(a).[1] "To be an 'enterprise engaged in commerce,' the defendant-employer must have (a) an annual gross sales volume of at least $500,000, and (b) 'employees handling, selling or otherwise working on goods or materials that have been moving in or produced for commerce by any person.'" *Brito*, 2022 WL 875099, at *7 (citing 29 U.S.C. § 203(s)(1)(A)).

Here, Plaintiff alleges the statutory requirements without providing any specific examples. Compl. ¶ 8. Nonetheless, based on Plaintiff's allegations that the Corporate Defendant has an annual gross sales volume of at least $500,000 and has employees "directly engaged in interstate commerce," (*id.*), the Court can reasonably infer that at least some of the equipment, goods, materials, and supplies used by the Defendant have moved or engaged in interstate or international commerce. *See Kilmchak v. Cardona, Inc.*, No. 2:09-CV-4311 (MKB) (ARL), 2014 WL 3778964, at *5 (E.D.N.Y. Jul. 31, 2014) (noting that several courts in this district have inferred FLSA enterprise coverage based on the nature of the defendant's business notwithstanding such pleading deficiencies and collecting cases). Although somewhat conclusory, Plaintiff's pleadings are

---

[1] The NYLL lacks this requirement. *Gangadharan v. GNS Goods & Servs.*, No. 18-CV-7342 (KAM) (MMH), 2022 WL 824135, at *11 (E.D.N.Y. Mar. 18, 2022).

sufficient to establish enterprise liability. *See Reyes-Fana v. Moca Grocery NY Corp.*, No. 21-CV-4493 (AMD) (RER), 2022 WL 5428688, at *5 (E.D.N.Y. Aug. 16, 2022), *report and recommendation adopted*, 2022 WL 4094241 (Sep. 7, 2022) (holding conclusory allegations are sufficient so long as "the court can infer that the enterprise was engaged in interstate commerce").

Finding these threshold requirements satisfied, the Court proceeds to consider whether the Defendants' alleged conduct violated the FLSA and NYLL.

### ii. Violations of the FLSA and NYLL

To properly plead an FLSA or NYLL violation, a plaintiff must show that he "performed work for which he was not properly compensated." *Santillan v. Henao*, 822 F. Supp. 2d 284, 293–94 (E.D.N.Y. 2011).

### a. Overtime Pay

For an unpaid overtime wage claim, a plaintiff must provide information "to 'support a reasonable inference that they worked over forty hours per week.'" S*antos v. Cancun & Cancun Corp. et al.*, No. 21-CV-0192 (LDH) (RER), 2022 WL 1003812, at *5 (E.D.N.Y. Feb. 17, 2022) (quoting *Kleitman v. MSCK Mayain Olam Habba Inc.*, No 11-CV-2817 (SJ) (JMA), 2013 WL 4495671, at *4 (E.D.N.Y. Aug. 20, 2013)). When a defendant defaults, they fail to raise any affirmative defense against the plaintiff's overtime pay claim, and thus, the employee's recollection of hours worked and wages earned is sufficient to hold the defendant liable for the overtime pay violation. *See Kleitman*, 2013 WL 4495671, at *4 (finding that plaintiff met his burden of proof based on his recollection of hours worked and wages earned, given the defendants' failure to assert an affirmative defense against the plaintiff's unpaid overtime claim).

Plaintiff alleges that he worked approximately ten to sixteen hours of overtime every week, but the Defendant failed to pay him at the statutorily required overtime rate. Compl. ¶¶ 20, 30.

Rather, Plaintiff was paid his regular rate of pay, or "straight time" wages, for his overtime hours throughout the course of his employment. *Id*. ¶ 17. Since the Corporate Defendants have defaulted, they fail to invoke an affirmative defense against Plaintiff's overtime wage claim. Accordingly, Plaintiff's recollection and estimates of hours worked and wages earned are sufficient information to support a reasonable inference that an overtime violation occurred.

**b.    Spread of Hours Pay**

In addition, under the NYLL, employees are entitled to an additional hour of pay at the minimum wage rate for each day an employee works at least ten hours. 12 N.Y.C.C.R. § 142-2.4; *see Fermin*, 93 F. Supp. 3d at 46. Plaintiff worked ten or more hours per day for four days each week during the relevant period. *See* Transcript of Inquest Hearing dated July 19, 2023 ("Inquest Tr.") at 15:18-17:14. But "the spread of hours pay requirement only applies to those employees making minimum wage" or under and "not to those making more than minimum wage." *Shu Qin Xu v. Wai Mei Ho*, 111 F. Supp. 3d 274, 281 (E.D.N.Y. 2015); *see Hernandez v. Delta Deli Market Inc.*, No. 18-CV-00375 (ARR) (RER), 2019 WL 643735, at *7 (Feb. 12, 2019) ("Only employees making the minimum wage rate, or less, are eligible for spread-of-hours compensation."). Plaintiff earned $18 per hour between October 20, 2016 and December 31, 2019. Inquest Tr. at 10:10–18, which exceeded the statutory minimum wage.[2] Thus, Plaintiff is not entitled to spread-of-hours pay for his work performed between 2016 and 2019. Plaintiff earned $15 per hour from January 1, 2020 to February 28, 2020, and from September 1, 2020 to November 20, 2020 (Inquest Tr. At

---

[2] From January 1, 2016 to December 30, 2016, the New York State statutory minimum wage was set to $9 per hour. N.Y. Lab. Law § 652. From December 31, 2016 to December 30, 2017, the New York State statutory minimum wage was set to $11 per hour. N.Y. Lab. Law § 652. From December 31, 2017 to December 30, 2018, the New York State statutory minimum wage was set to $13 per hour. N.Y. Lab. Law § 652. Starting from December 31, 2018, and continuing into present day, the New York State minimum wage has been set at $15 per hour. N.Y. Lab. Law § 652.

10:19–11:19) which was equal to the statutory minimum wage. Thus, Plaintiff has established spread-of-hours pay liability for those periods.

<h4>c.      Statutory Penalties</h4>

Employers are also required under the NYLL to notify the employees of "the rate or rates of pay and basis thereof," and the notice must be in writing in English and in the primary language of each employee. N.Y. Lab. Law § 195(1). Where an employee is not provided with this wage notice within "ten business days" of the first date of employment, the employee may recover $50 in civil damages each workday that the violation occurred, up to a maximum of $5,000. N.Y. Lab. Law § 198(1-b).

In addition, under the NYLL, an employer must provide its employees with a wage statement for "every payment of wages" listing: dates of work covered by that payment of wages, the name of the employee, the name of the employer, the address and phone number of employer, and the rate or rates of pay and basis thereof. N.Y. Lab. Law § 195(3). Employees are entitled to recover "damages of two hundred fifty dollars for each workday that the violations occurred," up to a maximum of $5,000. N.Y. Lab. Law § 198(1)(d). Plaintiff alleges that the Corporate Defendants failed to furnish him with wage statements and wage notices throughout the entirety of his employment. Compl. ¶¶ 47, 51). Plaintiff further alleges that he was paid in cash without a paystub. Compl. ¶ 18; Inquest Tr. 21:6–22:8.

Plaintiff sufficiently pleaded that Defendants failed to comply with NYLL § 195(1)(a) and § 195(3). But as noted *supra,* Plaintiff nevertheless lacks standing to maintain these claims. "Article III standing requires plaintiffs to show (1) an 'injury in fact,' (2) a 'causal connection' between that injury and the conduct at issue, and (3) a likelihood 'that the injury will be redressed

by a favorable decision.'" *Maddox v. Bank of N.Y. Mellon Tr. Co., N.A.*, 19 F.4th 58, 62 (2d Cir. 2021) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)).

To demonstrate an injury in fact, a plaintiff "must show the invasion of a (1) legally protected interest that is (2) concrete and (3) particularized and (4) actual or imminent, not conjectural or hypothetical." *Id*. (quoting *Strubel v. Comenity Bank*, 842 F.3d 181, 188 (2d Cir. 2016)). While a so-called "informational injury" (i.e., failure to receive required information) can give rise to standing, *see TransUnion LLC*, [141 S. Ct. at 2214], the plaintiff must allege "downstream consequences" from failing to receive that information that show an interest in using the information "beyond bringing [this] lawsuit." *Harty v. W. Point Realty, Inc.*, 28 F.4th 435, 444 (2d Cir. 2022) (first quoting *TransUnion*, 141 S. Ct. at 2214, then *Laufer v. Looper*, 22 F.4th 871, 881 (10th Cir. 2022)). Plaintiff fails to allege an injury in fact sufficient to confer standing and has not demonstrated how his lack of notice resulted in an injury greater than Defendants' overtime and spread-of-hours wage violations. *See Reyes*, 2023 WL 4303943, at *6. Nor has Plaintiff "identified an informational injury with consequences beyond this lawsuit." *Id.*

Accordingly, the undersigned respectfully recommends that default judgment be granted as to Plaintiff's overtime and spread-of-hours claims but denied as to Plaintiff's wage notice and wage statement claims against Defendant Tejada Magana. The undersigned further respectfully recommends that the Court hold Defendant Tejada Magana jointly and severally liable under the FLSA and NYLL. Because Plaintiff has established Defendant Tejada Magana's liability, the Court turns to consider Plaintiff's damages.

### D.    Relief

Because Plaintiff has established Defendants' liability as to Plaintiff's overtime wage and spread of hours claims, the Court must determine whether Plaintiff is entitled to the relief he requests.

"While a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages." *Bricklayers*, 779 F.3d at 189 (cleaned up).  Rather, "[t]he [C]ourt must be satisfied that Plaintiff has met the burden of proving damages to the [C]ourt with reasonable certainty." *Balhetchet v. Su Caso Mktg. Inc.*, No. 19-CV-4475 (PKC)(SJB), 2020 WL 4738242, at *3 (E.D.N.Y. Aug. 14, 2020) (citations and quotation marks omitted).  Courts must determine "damages with reasonable certainty," and avoid impermissible speculation. *Pasatieri v. Starline Prod., Inc.*, No. 18-CV-4688 (RPK) (VMS), 2020 WL 5913190, at *2 (E.D.N.Y. Oct. 6, 2020) (quoting *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999)).

"[B]ecause under FLSA the burden is on an employer to properly record hours, a plaintiff need not compute FLSA damages with precision." *Lopez v. Royal Thai Plus*, LLC, No. 16-CV-4028 (NGG)(SJB), 2018 WL 1770660, at *9 (E.D.N.Y. Feb. 6, 2018) (cleaned up), *report and recommendation adopted*, 2018 WL 1770555 (E.D.N.Y. Apr. 12, 2018).  "Under the FLSA framework, if an employer fails to keep records of work performed, a court may then award damages to the employee, even though the result may be only approximate." *Brito*, 2022 WL 875099, at *15 (collecting cases).  Where a plaintiff has sufficiently established claims under the FLSA and NYLL, that plaintiff is "not entitled to recover under both FLSA and NYLL for [backpay] earned over the same period." *Lopez*, 2018 WL 1770660, at *10.

Here, Plaintiff seeks damages including: (1) unpaid overtime wages under the FLSA and NYLL; (2) unpaid spread-of-hours pay under the NYLL; (3) failure to provide wage notices and statements under the NYLL; (4) liquidated damages; (5) reasonable attorney's fees and costs; and (6) pre-judgment and post-judgment interest. Pl.'s Mem. at 3-4, 6-8. For the reasons set forth below, the undersigned respectfully recommends that Plaintiff be awarded a total of $102,106.90 in damages, comprised of: $37,083.14 in unpaid overtime wages; $1,182 in unpaid spread-of-hours wages; $38,265.14 in liquidated damages; $14,624.62 in pre-judgment interest plus $9.43 per diem until the date that judgment is entered; post-judgment interest in accordance with 28 U.S.C. § 1961; attorneys' fees of $9,000.00; and costs of $1,952.00.[3]

### i. Overtime Wage Damages

Plaintiff seeks unpaid overtime wages under the FLSA and NYLL. Compl. ¶¶ 24-33, 34-40. Under these laws, the employer must pay "one and one-half times the regular rate of pay for any hours worked in excess of forty per week." *Nakahata v. New York–Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 200 (2d Cir. 2013) (citing 29 U.S.C. § 207 (a)(1)).

The overtime rate of pay, according to the FLSA, "shall be calculated based on the employee's regular rate of pay or the minimum wage, whichever is greater." *Bedasie v. Mr. Z. Towing, Inc.*, No. 13-CV-5453 (CLP), 2017 WL 1135727, at *36 (E.D.N.Y. Mar. 24, 2017), *report and recommendation adopted*, 2017 WL 6816331 (Dec. 21, 2017) (citing 29 U.S.C. § 207(a); 29 C.F.R. § 778.107). Plaintiff testified that he worked 22 hours and 30 minutes of overtime each week throughout the relevant employment periods. Inquest Tr. at 15:18-17:14, 18:6-19:11. The Court calculates the unpaid overtime premium owed to Plaintiff for each period of pay by dividing

---

[3] These numbers are the same as in Judge Reyes's report and recommendation, minus the $10,000 in statutory damages, for the reasons outlined above.

the regular wage rate in half for the entirety of the relevant employment periods, given that Plaintiff earned a regular wage equal to or greater than the minimum wage at the time. *See Bedasie*, 2017 WL 1135727, at *42.

The Court's calculations are outlined below:

| Pay Period | | Weeks Worked | OT Hours Per Week | Actual Regular Hourly Rate | Applicable Statutory Minimum Wage | OT Premium[4] | Total Unpaid Wages |
|---|---|---|---|---|---|---|---|
| From | To | | | | | | |
| 10/20/2016 | 12/31/2019 | 166.71 | 22.5 | $18 | $9-15 (at various points) | $9 | $33,758.77 |
| 1/1/2020 | 2/28/2020 | 8.28 | 22.5 | $15 | $15 | $7.50 | $1,397.25 |
| 9/1/2020 | 11/20/2020 | 11.42 | 22.5 | $15 | $15 | $7.50 | $1,927.12 |
| Total Unpaid Overtime Wages | | | | | | | $37,083.14 |

Accordingly, the Court respectfully recommends that Plaintiff should be awarded $37,083.14 in total unpaid overtime wages against Defendant Tejada Magana.

**ii.    Unpaid Spread of Hours**

Plaintiff also seeks spread-of-hours pay under the NYLL. Compl. ¶¶ 41-45. Pursuant to the NYLL, employees are "entitled to recover compensation for an extra hour of work at the minimum wage for each day that the employee works in excess of ten hours." *Man Wei Shiu v. New Peking Taste Inc.*, No. 11-CV-1175 (NGG) (RLM), 2014 WL 652355, at *10 (E.D.N.Y. Feb. 19, 2014) (citing 12 N.Y.C.R.R. 12 § 142–2.4). The Court calculates the spread-of-hours pay owed to Plaintiff as follows:

---

[4] "OT Premium" is calculated as Regular Hourly Rate divided by 2.

28

| Pay Period | | Weeks Worked | Spread-of-Hours Days per Week | Actual Regular Hourly Rate | Applicable Statutory Minimum Wage | Total Unpaid Wages |
|---|---|---|---|---|---|---|
| From | To | | | | | |
| 1/1/2020 | 2/28/2020 | 8.28 | 4 | $15 | $15 | $496.80 |
| 9/1/2020 | 11/20/2020 | 11.42 | 4 | $15 | $15 | $685.20 |
| Total Unpaid Spread of Hours Wages | | | | | | $1,182.00 |

### iii. Liquidated Damages

Both the FLSA and NYLL generally provide for double (or "liquidated") damages unless the defendant proves a good faith basis to have believed it was complying with the law. *See* 29 U.S.C. §§ 216(b), 260; N.Y. Lab. Law § 663(1). Specifically, the NYLL permits recovery of "liquidated damages 'equal to one hundred percent of the total amount of the wages found to be due,' unless the employer provides a good faith basis for believing [they were] in compliance with the law." *Martinez v. Alimentos Saludables Corp.*, No. 16-CV-1997 (DLI) (CLP), 2017 WL 5033650, at *23 (E.D.N.Y. Sept. 22, 2017). The plaintiff may not recover "duplicative" liquidated damages (*i.e.*, under both the FLSA and NYLL) for the same course of conduct. *Rana v. Islam*, 887 F.3d 118, 123 (2d Cir. 2018).

Here, Plaintiff repeatedly alleges that Defendant Tejada Magana's misconduct was willful and that the Defendant did not act in good faith. *See* Compl. ¶¶ 48, 52, 56. Moreover, Defendant Tejada Magana has not answered or otherwise appeared in this action, so he has forgone his opportunity to prove good faith. *See Zabrodin*, 2023 WL 8009319, at *11 (citing *Chen v. Oceanica Chinese Rest.*, No. 13-CV-4623 (NGG) (PK), 2023 WL 2583856, at *16 (E.D.N.Y. Mar. 21, 2023)).

Accordingly, Plaintiff is entitled to recover liquidated damages for Defendant Tejada Magana's violations of the FLSA and the NYLL. This Court respectfully recommends that Plaintiff be awarded one hundred percent of the overtime pay and spread-of-hours damages that he is entitled to under the NYLL, amounting to a liquidated damages award of $38,265.14.[5]

### iv. Pre-Judgment Interest

Though the FLSA does not permit awarding pre-judgment interest in addition to liquidated damages, the NYLL does. *Fermin*, 93 F. Supp. 3d at 48. To avoid giving the plaintiff a windfall, however, courts award pre-judgment interest only on the compensatory damages award and not on the liquidated damages award. *Id.* at 49. Courts calculate pre-judgment interest on a NYLL award at a rate of 9% per year. N.Y. C.P.L.R. § 5004; *Zabrodin*, 2023 WL 8009319, at *12. For cases where damages were incurred at various times, the court may compute interest either upon each item from the date it was incurred or upon all the damages from a single reasonable intermediate date. N.Y. C.P.L.R. § 5001(b). Courts have discretion to determine a reasonable date from which to award pre-judgment interest, and the median date between the earliest and latest that the plaintiff's NYLL claim accrued is considered a reasonable single intermediate date. *Elghourab v. Vista JFK, LLC*, No. 17-CV-911 (ARR) (ST), 2019 WL 2431905, at *12 (E.D.N.Y. Jun. 11, 2019).

Here, the midpoint of Plaintiff's accrual of damages falls on November 4, 2018 (between October 20, 2016, and November 20, 2020). Accordingly, the undersigned respectfully recommends that Plaintiff be awarded $14,624.62 in pre-judgment interest, plus $9.43 per diem until the date judgment is entered.[6]

---

[5] $37,083.14 [overtime wages] + $1,182 [spread-of-hours] = $38,265.14 in non-statutory damages.
[6] "Pre-judgment interest is calculated using the following formula: (total compensatory damages due to plaintiff) × (0.09/365) × (number of days from the midpoint date to the date the Clerk of the Court enters

## v.      Attorneys' Fees and Costs

Plaintiff seeks attorneys' fees and costs in the amount of $10,952 for 23.5 hours of legal work. Dkt. No. 29-4. "Both the FLSA and NYLL are fee-shifting statutes which entitle a plaintiff to an award of reasonable attorney's fees and costs in wage-and-hour actions." *Callari v. Blackman Plumbing Supply, Inc.*, No. 11-CV-3655 (ADS) (AKT), 2020 WL 2771008, at *6 (E.D.N.Y. May 4, 2020), *report and recommendation adopted*, 2020 WL 2769266 (E.D.N.Y. May 28, 2020). "District courts have broad discretion to determine the amount of attorneys' fees awarded, and the party requesting fees must submit documentation to support its request." *Perry v. High Level Dev. Contracting & Sec. LLC*, No. 12-CV-2180 (AMD)(PK), 2022 WL 1018791, at *14 (E.D.N.Y. Mar. 16, 2022), *report and recommendation adopted*, 2022 WL 1017753 (E.D.N.Y. Apr. 5, 2022).

"The starting point for determining the presumptively reasonable fee award is the lodestar amount, which is the product of a reasonable hourly rate and the reasonable number of hours required by the case." *Hennessy v. 194 Bedford Ave Rest. Corp.*, No. 21-CV-5434 (FB)(RML), 2022 WL 4134502, at *6 (E.D.N.Y. Aug. 8, 2022), *report and recommendation adopted*, 2022 WL 4134437 (E.D.N.Y. Sept. 12, 2022) (internal citations and quotation marks omitted). "To determine a reasonable hourly rate, courts consider market rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Id.*

---

judgment)." *Diaz*, WL 4646866, at *12 n. 13. Here, the midpoint is November 4, 2018, and the Clerk of the Court entered default on February 1, 2023.

As such, pre-judgment interest is calculated as follows: Total Compensatory Damages ($38,265.14) × (0.09/365) × (1,550 [days between November 4, 2018 and February 1, 2023]) = $14,624.62.

Per diem interest is calculated as follows: Total Compensatory Damages ($38,265.14) × (0.09/365) = $9.43 per diem.

(cleaned up). "If the Court finds that some of the time the attorney billed was not reasonably necessary, it should reduce the time for which compensation is awarded accordingly." *Perry*, 2022 WL 1018791, at \*14 (cleaned up). Where time entries are vague, duplicative, or otherwise inadequate, a court may make an across-the-board reduction or percentage cut, in the amount of hours. *Id*. "The applicant bears the burden to demonstrate reasonableness." *Sadowski v. Yeshiva World News, LLC*, No. 21-CV-7207 (AMD) (MMH), 2023 WL 2707096, at \*8 (E.D.N.Y. Mar. 16, 2023), *report and recommendation adopted*, 2023 WL 2742157 (E.D.N.Y. Mar. 31, 2023).

Here, the record shows that an award of attorneys' fees is appropriate.

### a. Hourly Rate

Plaintiff seeks attorney's fees in the amount of $9,600. Dkt. No. 24.[7] Both the NYLL and FLSA allow prevailing employees to recover "the costs of the action" and "a reasonable attorney's fee to be paid by the defendant." 29 U.S.C. § 216(b); N.Y. Lab. Law § 198. Plaintiffs who are seeking reimbursement of attorney's fees "bear the burden of proving the reasonableness and the necessity of the hours spent and rates charged." *Fermin*, 93 F. Supp. 3d at 51. Further, "requests for attorney's fees in this Circuit must be accompanied by contemporaneous time records that show for each attorney the date the work was done, 'the hours expended, and the nature of the work done.'" *Id*. (quoting *Koon Chun Hing Kee Soy & Sauce Factory, Ltd. v. Kun Fung USA Trading Co. Inc.*, No. 07-CV-2568 (JG), 2012 WL 1414872, at \*10 (E.D.N.Y. Jan. 20, 2012)).

---

[7] On January 19, 2024, this Court ordered Plaintiff to submit evidence of damages by January 30, 2024. *See* Text Order dated January 19, 2024; Text Order dated January 22, 2024. Plaintiff has failed to submit an updated calculation of attorneys' fees and costs and instead appears to rely on its prior calculations at Dkt. No. 24. *See e.g.,* Proposed Judgment, Dkt. No. 29-4, at 2; Dkt. No. 31, at 2-3. The Court will rely on Plaintiff's representations and declines to consider an award of attorneys' fees for work performed in preparation for his second motion for default judgment. Indeed, it would be nonsensical to award attorneys' fees due to Plaintiff's failure to comply with procedural rules in its first motion for default judgment.

A reasonable hourly rate may be ascertained by "multiplying the reasonable numbers of hours spent on a case by a reasonable hourly rate based on the prevailing hourly rate for similarly experienced attorneys in the district in which the court sits." *Santos*, 2022 WL 1003812, at *8. "Courts in the Eastern District of New York have recently awarded hourly rates" from "$70 to $100 for legal support," "$100 to $200 for junior associates," "$200 to $325 for senior associates," and "300 to 450 for partners" in FLSA cases. *Martinez v. New 168 Supermarket LLC*, 19-CV-4526 (CBA) (SMG), 2020 WL 5260579, at *8 (E.D.N.Y. Aug. 19, 2020) (collecting cases), *report and recommendation adopted*, 2020 WL 5259056 (Sep. 3, 2020).

Plaintiff has submitted a declaration regarding attorney's fees, which details the time spent on this litigation as well as counsel's hourly rate. *See* Dkt. No. 24-3, at ¶¶ 17-18). Plaintiff requests $9,600 in attorney's fees and for 23.5 hours of work. *See* Dkt. No. 24. The requested attorney's fees reflect the work of attorney Johnson Atkinson, who requests compensation at a rate of $400 per hour for his work on this case, and $200 per hour for his travel to the inquest hearing. Dkt. No. 24-3 at ¶ 18. Mr. Atkinson is a partner who has been practicing law since 2012. *Id*. ¶ 4. Mr. Atkinson has experience in corporate, tenant, and personal injury litigation. *Id*. at ¶¶ 7–16. Nevertheless, "[r]ates of $400 per hour or higher in FLSA cases have generally been reserved for attorneys with more experience . . . ." *Lopez v. 1923 Sneaker, Inc.*, No. 18-CV-3828 (WFK) (RER), 2021 WL 1845057, at *10 (E.D.N.Y. Mar. 5, 2021) (collecting cases and reducing requested rate of $400 per hour in FLSA case for attorney with eighteen years of labor and employment experience), adopted by 2021 WL 1259623 (Apr. 6, 2021). Accordingly, the undersigned respectfully recommends that the Court award Plaintiff attorney's fees at the hourly rate of $375. *See Cohetero v. Stone & Tile Inc.*, No. 16-CV-4420 (KAM) (SMG), 2018 WL

565717, at *5 (E.D.N.Y. Jan. 25, 2018) (awarding $375 hourly rate for an attorney with "fifteen years' practice experience, including significant experience in FLSA and NYLL lawsuits.").[8]

As to the number of hours worked, 23.5 hours is within the range of time spent on FLSA and NYLL default judgment cases in this District. *See Cuchimaque v. A. Ochoa Concrete Corp.*, No. 22-CV-6136 (RPK) (RML), 2023 WL 5152336, at *8 (E.D.N.Y. July 18, 2023) (collecting cases and finding 22 hours spent on an FLSA default judgment case reasonable); *Godwin v. Buka New York Corp.,* No. 20-CV-969 (RPK) (CLP), 2021 WL 612336, at *13 (E.D.N.Y. Feb. 17, 2021), *report and recommendation adopted*, 2021 WL 1026553 (E.D.N.Y. Mar. 17, 2021) (finding 21.4 hours spent on an FLSA default judgment action reasonable); *Garcia Lazaro v. Best Fish Mkt. Corp.*, No. 21-CV-5305 (BMC), 2022 WL 280768, at *2 (E.D.N.Y. Jan. 31, 2022) ("19.5 hours is a reasonable amount of time to obtain a default judgment" in an FLSA case). The Court likewise finds reasonable Plaintiff's request for one additional hour of attorney time at a rate of $187.50 per hour for Mr. Atkinson's travel in connection with the inquest hearing. As such, this Court respectfully recommends awarding attorney's fees for 23.5 hours at a rate of $375 per hour, and one hour at a rate of $187.50 per hour, for a total of $9,000.00.

### b. Costs

Plaintiff also seeks costs totaling $1,952. Dkt. No. 24-2. "Both the FLSA and New York state law provide for an award of costs." *Fermin*, 93 F. Supp. 3d at 52 (citing 29 U.S.C. § 216(b); N.Y. Lab. Law § 198(4)). To recover these costs, plaintiffs are required to "submit adequate documentary evidence in support" of those costs. *See Tacuri v. Nithin Constr. Co.*, No. 14-CV-2908 (CBA) (RER), 2015 WL 790060, at *14 (E.D.N.Y. Feb. 24, 2015). Here, Plaintiff has

---

[8] The Court notes that Plaintiff did not object to this same fee recommendation in Judge Reyes's Report and Recommendation in this action.

submitted invoices for the following costs: an ECF filing fee ($402); a Spanish-language interpreter for the July 19, 2023 inquest hearing ($555); mailing of the docket sheet to the Defendants ($345); service of the Summons and Complaint on the Defendants ($494); and the transcript of the July 19, 2023 inquest hearing ($156).  Dkt. No. 24-2.  In total, Plaintiff has provided accounting for all requested costs.  *See LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 768 (2d. Cir. 1998) (quotations omitted).  Therefore, the undersigned respectfully recommends that the Court award Plaintiff $1,952.00 in costs.

### vi.  Post-Judgment Interest

Plaintiff is also entitled to post-judgment interest under 28 U.S.C. § 1961(a).  Section 1961 provides that "interest shall be allowed on any money judgment in a civil case recovered in a district court."  *Cabrera v. Canela*, 412 F. Supp. 3d 167, 186 (E.D.N.Y. 2019) (quoting 28 U.S.C. § 1961(a)).  Under the statute, interest is calculated "from the date of the entry of judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding[ ] the date of the judgment."  *Id*.

Thus, this Court respectfully recommends that Plaintiff be awarded statutory post-judgment interest.  *See Fermin*, 93 F. Supp 3d at 53 (finding that post-judgment interest is mandatory).

### vii.  Fifteen Percent Increase Penalty

Plaintiff seeks an automatic increase of 15 percent for any unpaid amount of the judgment still pending after 90 days following the entry of judgment.  Pl.'s Mem. at 7-8.  Where there is a cause of action under the NYLL, "[a]ny judgment or court order awarding remedies under this section shall provide that if any amounts remain unpaid upon the expiration of ninety days

following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent." N.Y. Lab. Law § 198(4). "The increase applies only to damages awarded under state law." *Esquivel*, 2023 WL 6338666, at *16. (citations omitted).

But "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c); *see Silge v. Merz*, 510 F.3d 157, 160 (2d Cir. 2007) (holding that plaintiff may not collect damages other than those specifically expressed in the complaint). Here, Plaintiff's Complaint is silent regarding the automatic fifteen percent increase or other late-payment penalty under NYLL § 198(4). Rather, Plaintiff requested the automatic fifteen percent increase in his Motion, only after the Corporate Defendants defaulted. (Pl.'s Mem. at 7–8).

Accordingly, pursuant to Federal Rule of Civil Procedure 54(c), this Court respectfully recommends that Plaintiff's request for such an increase be denied. *See Ore v. H & C Cleaning Corp.*, No. 22-CV-20 (AMD) (RER), 2022 WL 19520879, at *14 (E.D.N.Y. Dec. 14, 2022) (quoting *Cardoza v. Mango King Farmers Mkt. Corp.*, No. 14-CV-3314 (SJ) (RER), 2015 WL 5561033 at *3 (E.D.N.Y. Sept. 1, 2015), *report and recommendation adopted*, 2015 WL 5561180 (Sept. 21, 2015)) (denying request for automatic increase where plaintiff only requested relief in motion for default judgment).[9]

The Court respectfully recommends that the damages outlined in the following chart be awarded to Plaintiff:

---

[9] The Court again notes that Plaintiff did not object to the same determination made in Judge Reyes's Report and Recommendation in this action.

| Category | Amount Due |
|---|---|
| Unpaid Overtime Wages | $37,083.14 |
| Unpaid Spread of Hours Wages | $1,182.00 |
| Liquidated Damages | $38,265.14 |
| Prejudgment Interest | $14,624.62 |
| Attorneys' Fees | $9,000.00 |
| Costs | $1,952.00 |
| **Total Amount Due (excluding post judgment interest and a fifteen percent increase penalty)** | **$102,106.90** |

## IV. <u>Conclusion</u>

In sum, the Court finds that Plaintiff sufficiently alleges Defendant Tejada Magana's violations of the FLSA and NYLL. Accordingly, the Court respectfully recommends **GRANTING in part** Plaintiff's Motion as follows: (1) a default judgment should be entered against the Defendant; and (2) Plaintiff should be awarded damages which include: (a) $37,083.14 for unpaid overtime wage; (b) $1,182.00 for unpaid spread of hour wages; (c) $38,265.14 in liquidated damages; (d) $14,624.62 in prejudgment interest to increase by $9.43 per day until the entry of judgment; (e) post-judgment interest as set forth in 28 U.S.C. § 1961(a); (f) attorneys' fees of $9,000.00; and (g) costs of $1,952.00, for a total award of $102,106.90. Additionally, the Court respectfully recommends dismissal of Plaintiff's Fourth, Fifth, and Sixth causes of action without prejudice for lack of standing.

A copy of this Report and Recommendation is being electronically served on counsel. This Court directs Plaintiff's counsel to serve a copy of this Report and Recommendation by overnight mail and first-class mail to Defendants and to file proof of service on ECF by April 16, 2024.

Copies of this Report and Recommendation shall be served at the following addresses:

Piero Tejada
2514 High Point Cir.
Wichita, KS 67205-1329

Piero Tejada
7 Rhode Island Street
Coram, NY 11727

Piero J. Tejada
7873 84th Street
Glendale, NY 11385-7610

P. Tejada
192 Nantucket Dr.
Reading, PA 19605-7011

P. Tejada
10558 Eastern Shore Blvd. Apt. 212
Spanish Fort, AL 36527-5850

Darren Rumack, Esq.
The Klein Law Group P.C.
39 Broadway Suite 1530
New York, NY 10006


Any objections to this Report and Recommendation must be filed within 14 days after service of this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). *See also* Fed. R. Civ. P. 6(a) & (d) (addressing computation of days). Any requests for an extension of time for filing objections must be directed to Judge Gujarati. Failure to file objections within this period designating the particular issues to be reviewed waives the right to appeal the district court's order. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010);

*Kotlyarsky v. United States Dep't of Just.*, No. 22-2750, 2023 WL 7648618 (2d Cir. 2023); *see also Thomas v. Arn*, 474 U.S. 140 (1985).

Dated:   Brooklyn, New York
     April 15, 2024

             _/s/ Joseph A. Marutollo_
             JOSEPH A. MARUTOLLO
             United States Magistrate Judge